Main Belting Company v. Commissioner.
Main Belting Co. v. Commissioner
Docket No. 15983.
United States Tax Court
1949 Tax Ct. Memo LEXIS 245; 8 T.C.M. (CCH) 249; T.C.M. (RIA) 49062; March 11, 1949
*245 Worthlessness of stock in and debt due from petitioner's subsidiary not established in the taxable year 1942, nor in 1940. Fair market value of property acquired by petitioner in 1933 and sold by it in 1940 determined for purposes of carry-over of loss. George Craven, Esq., for the petitioner. William H. Best, Jr., Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies of $19,025.09 in income tax for 1942 and $12,696.80 in excess profits tax for 1943. The respondent also determined an overassessment of $5,253.43 in its income tax for 1943. Certain issues were settled by stipulation leaving in controversy the following: (1) The right of the petitioner to deduct from its gross income for the year 1942 a bad debt of $29,465 due from the Main Belting Company of Canada, Ltd. (2) The right to deduct from gross income for the year 1942 the sum of $4,975 representing stock of the same company which allegedly became worthless and was charged off during that year. The petitioner raises the alternative issue that if it be held that the debt and stock did not become worthless in 1942, they both became *246 worthless in 1940 and are allowable deductions in 1942 as a part of its net loss carry-over from 1940. (3) The fair market value on April 7, 1933, of certain real estate in Philadelphia acquired on that date by deed in lieu of foreclosure and sold in 1940. The sale allegedly resulted in a net loss carry-over to the year 1942. Findings of Fact Certain facts were stipulated. The portions thereof pertinent to the issues are as follows: The petitioner is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. It is engaged in the business of manufacturing and selling canvas belt for conveying and power transmission. It filed its appropriate tax returns for the taxable years with the collector of internal revenue for the first district of Pennsylvania. The Main Belting Company of Canada, Ltd., hereinafter called the Canadian Company, was incorporated on March 18, 1910, under the Dominion Companies Act of Canada. It had 1,000 shares of common stock outstanding as of January 31, 1924. The petitioner acquired 995 shares of the common capital stock of the Canadian Company on January 31, 1924, from William T. Plummer, then president of the Canadian *247 Company and of the petitioner, respectively, at a cost of $4,975. The petitioner continued to hold the stock throughout the taxable years. The balance sheet of the Canadian Company on January 1, 1924, was as follows: ASSETS
Cash
$ 1,448.75
Accounts Receivable
16,648.41
Bill Receivable
555.82
Refund Sales tax
62.94
Work in process
33,866.62
Work & equipment
6,430.69
Office furniture
627.23
Deferred charges
692.95
Total
$60,333.41
LIABILITIES
Current Liabilities Miscel.
$ 1,855.64
Due Main Belting Co.
53,477.77
Capital stock
5,000.00
Total
$60,333.41
The annual gross sales of the Canadian Company from the years 1915 to 1939 (up to April 19, 1939) were as follows: Year
Sales
1915
$ 20,570.66
1916
104,608.89
1917
50,817.96
1918
73,977.50
1919
62,153.14
1920
77,247.79
1921
21,734.51
1922
1923
15,954.50
1924
19,561.89
1925
24,697.66
1926
55,461.68
1927
41,437.96
1928
52,091.07
1929
36,452.23
1930
22,557.64
1931
13,309.67
1932
10,504.55
1933
11,611.84
1934
10,609.04
1935
10,341.33
1936
15,872.23
1937
16,714.54
1938
4,113.99
1939 (up to 4/19)
893.16
The net profits and losses *248 of the Canadian Company from 1915 to April 19, 1939, were as follows: Year
Profit (Loss)
1915
($ 4,321.99)
1916
20,009.34
1917
19,135.00
1918
15,822.79
1919
8,282.69
1920
10,586.62
1921
(16,930.38)
1922
1923
(5,654.63)
1924
(2,175.57)
1925
(2,971.19)
1926
2,215.89
1927
2,282.93
1928
(2,755.52)
1929
(1,464.77)
1930
(3,312.33)
1931
(5,600.75)
1932
(1,715.91)
1933
136.65
1934
(671.66)
1935
(535.98)
1936
(1,917.32)
1937
(1,778.06)
1938
(1,926.88)
1939 (up to 4/19)
(217.41)
The petitioner's open account with the Canadian Company from February 25, 1939, to December 21, 1942, was reflected in the petitioner's books as follows: Date
Debit
Credit
Balance
1939
Feb. 25 Bal. Transfr. from Accts. Rec.
$4,672.45
$30,168.76
June 7 C. Sendel - May
74.29
30,168.76
June 11 C. Transf. from C. St.
100.00
30,094.47
July 15 Cr. on Coupon Bond
5.20
29,994.47
24 Sendel - June
12.43
29,989.27
Aug. 21 Sendel - July
27.45
29,976.84
Nov. 10 Adj. Couper Com. - Oct.
9.88
29,949.39
30 Adj. Couper Com. - Nov.
14.99
29,939.51
Dec. 18 Adj. Sendel CS
30.63
29,924.52
31 Adj. Couper - Dec.
18.50
29,893.89
1940
Jan. 15 Adj. Sendel CS
9.00
29,875.39
31 Couper Comm.
18.67
29,866.39
Feb. 29 Couper Comm.
28.81
29,847.72
Mar. 16 Con. Sales to Date
39.87
29,818.91
31 Couper Comm.
9.54
29,779.04
Apr. 30 Couper Comm.
52.71
29,769.50
21 Con Sale J.F. Co.
66.18
29,716.79
May 15 Consignment Sale
12.15
29,650.61
Aug. 31 Couper Comm.
10.68
29,638.46
Sept. 25 Adj. Couper Wagner
10.08
Nov. 30 Couper Comm. - Nov.
9.25
29,637.86
1941
Jan. 18 Sendel Audebon
5.00
31 Couper Comm. Adj.
4.72
29,633.61
Feb. 10 L. Sendel - Belting Stock
200.00
29,628.89
Mar. 28 L. Sendel - Fastener Stock
25.00
29,428.89
Sept. 19 New Ideal Laundry
7.68
29,403.89
1942
Nov. 20 Prov. of Quebec Tax
68.79
29,396.21
Dec. 21 Balance
29,465.00
*249 The balance on the open account on January 31, 1924, was $71,061.61. From that date to December 31, 1936, the account was reduced by donations of common and preferred stock made by William T. Plummer aggregating $42,041.86. On December 20, 1938, belting valued at $5,130.37 was returned to the petitioner by the Canadian Company and the credit was used to repay a loan obtained by the Canadian Company to pay notes and the manager's salary. As a result of financial difficulties of the petitioner, the petitioner's creditors caused an audit to be made of petitioner's accounts by Morris J. Cohen & Co., a firm of certified public accountants in Philadelphia, Pennsylvania, as of February 25, 1939. The audit showed current assets and inventories aggregating $53,229.29; other assets of $44,151.66; fixed assets valued at $247,565.99; patents and development, $30,000; deferred assets of $1,313.40, or a total of $376,260.34. The petitioner's liabilities consisted of $182,336.74 in current liabilities and $193,923.60 in capital and surplus. No provision was made for the payment of controverted taxes. On March 9, 1939, an agreement was entered into between the petitioner and a committee representing *250 its creditors, hereinafter referred to as the Creditors' Committee. On March 16, 1939, the Creditors' Committee, acting pursuant to the agreement of March 9, 1939, appointed Morris J. Cohen, a certified public accountant, to act as comptroller to manage the affairs of petitioner on behalf of the Creditors' Committee. The Creditors' Committee, acting through its comptroller, closed the office of the Canadian Company, 307 Common Street, Montreal, Province of Quebec, Canada, on April 19, 1939. The balance sheets of the Canadian Company as of May 31, 1939, and December 31, 1939, were as follows: (May 31, 1939)
Assets
Total
Cash
$ 136.10
Notes and Accounts Receivable
424.01
Inventories
2,006.25
Investments
200.00
Capital Assets: Depreciable assets
$499.42
Less: Reserve for depre-
ciation
418.29
81.13
Total Assets
$ 2,847.49
Liabilities
Accounts Payable
$ 4,672.45
Main Belting Co.
24,925.41
Capital Stock
5,000.00
Surplus
(31,750.37)
Total Liabilities & Capital
$ 2,847.49
(December 31, 1939)
Assets
Total
Cash
$ 90.08
Notes and Accounts Receivable
340.93
Inventories
1,926.74
Investments
200.00
Capital Assets: Depreciable assets
$499.42
Less: Reserve for depre-
ciation
418.29
81.13
Total Assets
2,638.88
Liabilities
Total
Accounts Payable $
Main Belting Co.
29,388.28
Capital Stock
5,000.00
Surplus
(31,749.40)
Total Liabilities & Capital
2,638.88
*251 The books and records of the petitioner and of the Canadian Company, respectively, show consigned stock sales by Louis A. Sendel, hereinafter referred to as Sendel. The period covered by such entries was from June 7, 1939, to May 21, 1940. On February 10, 1941, Sendel purchased the remaining stock of belting of the Canadian Company for $200. On March 28, 1941, Sendel purchased a part of the remaining, stock of belt fasteners of the Canadian Company for $25. On January 9, 1942, the Letters Patent of the Canadian Company were revoked by the Department of the Secretary of State of the Dominion of Canada. The Canadian Company failed to file its annual summaries with the Department of the Secretary of State of Canada as required by the provisions of the Companies Act. On December 9, 1941, registered notices were duly mailed to the Canadian Company and also in care of the petitioner's office informing it of its default in filing such summaries for three consecutive years and stating that unless proper reports were made thereto it would no longer be regarded as a subsisting company. No response was made to such notices and the Department deemed the Canadian Company to be no longer a subsisting *252 company. On November 20, 1942, the petitioner paid $68.79 on behalf of the Canadian Company to the Province of Quebec for the corporation tax of the Canadian Company for the year ended December 31, 1938. On September 7, 1944, the petitioner paid its creditors in full, the creditor's agreement of March 9, 1939 was terminated, and control of the petitioner regained by management. On January 31, 1940, Morris J. Cohen & Co., certified public accountants, submitted an audit report to W. H. Tobey, president of the petitioner. That report contained the following statement: "Due from Main Belting Co. of Canada, Ltd. $29,875.39 "Main Belting Co. of Canada, Ltd. Stock $4,975.00 "The above items represent the investment and the balance due from the Canadian subsidiary, which appear to have no realizable value." On February 3, 1941 and February 3, 1942, the said firm submitted similar reports to Tobey containing the same comment, varying only in the amounts of the debt and the descriptive phraseology. On February 10, 1943, an audit report was made by the same firm to Tobey containing the following: "It was also decided to charge off the capital stock and advances in the Canadian *253 Company since these assets were determined to be worthless. Necessary steps have been taken with the Canadian authorities regarding the complete liquidation of this company and release from further tax liabilities." In 1919 the petitioner acquired and remodeled a building located at 919-923 South 13th Street, Philadelphia, Pennsylvania, at a cost of $32,489.60. The building was used by it as an office building until 1923 and thereafter, until it was sold in 1930, as a warehouse. The petitioner sold the land and building located at 919-923 South 13th Street in 1930 for $18,000. The petitioner received $3,000 in cash and a $15,000 purchase money mortgage in payment of the purchase price. The petitioner reacquired the land and building located at 919-923 South 13th Street on April 7, 1933, when the mortgagor deeded the property back to the petitioner and the mortgage was cancelled. The unpaid balance of principal of the said purchase money mortgage on April 7, 1933, when the petitioner reacquired the property, was $15,000. The petitioner sold the land and building located at 919-923 South 13th Street on July 23, 1940 for $4,100. The property located at 919-923 South 13th Street *254 which was sold by the petitioner in 1940 was rented from month to month by the petitioner to the Joseph Vasella Post of the American Legion from April 7, 1933, when the petitioner reacquired the property, to July 23, 1940, the date on which it was sold, at a rental of $50 per month. It was stipulated that petitioner is entitled to the following deductions: A deduction of $500 for accrued Federal capital stock tax in 1940 instead of $199.10 deducted by it; to a deduction of $25 for Pennsylvania capital stock tax accrued in 1940 instead of $42.31 deducted by it; a deduction of $250 for Pennsylvania capital stock tax accrued in 1942; a deduction of $500 for Pennsylvania capital stock tax accrued in 1943 instead of $250 deducted by it, and a deduction of $625 for Federal capital stock tax accrued in 1943 instead of $937.50 deducted by it. It was also stipulated that petitioner is entitled to an unused excess profits credit carry-back from the year 1945 in the amount of $8,097.77. The record discloses the following additional facts: For some years the Canadian Company operated a factory in Canada for the manufacture of canvas belting. It was discontinued prior to 1939. The Company *255 maintained its own office and warehouse in Montreal, Canada. It sold canvas belting known as the Leviathan and Anaconda brands, made in Philadelphia by the petitioner after the factory was abandoned. In 1939, Walter H. Tobey, president of the petitioner, entered into an oral agreement with the Louis A. Sendel Company whereby Sendel agreed to take over the stock of the Canadian Company, sell it at a specified price, maintain the name and advertise the product of the Canadian Company and employ the company's representative. Sendel immediately took over the office records, warehouse, and the entire stock of goods of the Canadian Company then on Common Street and moved them to his own place of business on McGill Street. He also removed the large bronze plaque, bearing the name of the Canadian Company, from the original building of that company and placed it on the front of his own building at 422 McGill Street, Montreal. Sendel spent substantial amounts for advertising in 1939, 1940 and 1941. He mailed circulars to prospective customers whose names he obtained from the Canadian Company's mailing list. His letterheads bore the name, "Louis A. Sendel Co.," the legend "Agents for Main Belting *256 Co. of Canada Ltd." and the trade design of the Leviathan-Anaconda Belting. On August 31, 1939, Sendel wrote to Tobey on the letterhead and used the same form from 1939 to 1942. He prepared and issued a circular advertising those brands and in 1942 he placed an advertisement in the "Dominion of Canada and Newfoundland Gazetteer and Business Directory" reading "Elevating Transmitting and Conveying Belting - Brands Anaconda and Leviathan - Main Belting Co. of Canada Ltd., 422 McGill Street, Montreal." In 1942 he also placed an advertisement in the Montreal telephone directory, advertising specifically the Leviathan belting and designating his company as "Distributors of Main Belting Company of Canada Limited." Some orders for belting were directed to Sendel and some to the Canadian Company. During the period from 1939 to 1942, over 800 belt installations were sold by Sendel. The profits from such sales were made by Sendel and the petitioner. Some of the sales represented consignment stock but the profits therefrom were remitted to the petitioner. On February 10, 1941, Sendel purchased all of the remaining stock of belts of the Canadian Company for $200 and all the crescent belt *257 fasteners for $25. At the end of 1941, the Canadian Company still had on hand other fasteners valued at $1,400. Sendel sold some of such other fasteners and, by agreement, used the proceeds for advertising purposes. After 1939, Sendel was selling the products of the petitioner. On April 19, 1939, the office of the Canadian Company was closed by direction and insistence of Morris J. Cohen, comptroller of the petitioner, over the objections of Tobey. There was no change in the Canadian Company from 1939 to 1942 relating to the realizable value of the petitioner's stock in the Canadian Company and the debt due to the petitioner from it. In the summer of 1941, negotiations were started between Sendel and the Brazilian Cement Company for the purchase of belt and resulted in placing two large orders in 1942 and 1943. The customer originally went to the Canadian Company office but for practical reasons the sale was made by the petitioner. On April 9, 1942, an order was placed with the Canadian Company, "c/o Louis A. Sendel Co." by Trenton Steel Works, Limited, Trenton, Nova Scotia, for 500 feet of Anaconda belting. It is advantageous to an American company doing business in Canada to *258 do so through a Canadian company. The Canadian Company had been in business a long time and enjoyed a good reputation for the high quality of its product. The building at 919-923 South 13th Street, Philadelphia, was acquired and remodeled by the petitioner in 1919 at a cost of over $32,000. Its replacement cost on April 7, 1933, with proper allowances for depreciation, etc., was $28,585, including cost of land. The land measured approximately 44feet6inch X 57feet 7inch. The building on it is a three story brick modern club type structure. The first floor has a center entrance, marble floor, lobby, center hall, stairway to the second floor, timbered ceiling, restaurant or kitchen, bar and private rooms adjacent, and commodious toilet and rest rooms. The second floor has cloak room, uniform room, a small suite of three rooms, ladies' toilet room and three small meeting or board rooms. The third floor has a large assembly room and bar. Across the street from the building is a large public library with grounds. Neither the debt of $29,875.39 due to the petitioner from the Canadian Company nor the petitioner's stock in that company, costing the petitioner $4,975, became worthless in *259 1942 or 1940. They were both worthless in 1939. On April 7, 1933, the fair market value of the property at 919-923 South 13th Street, Philadelphia, was $18,000 apportioning $5,100 to the land and $12,900 to the building. At that time the building had an estimated useful life of 35 years. In its income tax returns for 1942, the petitioner claimed deductions of $4,975 representing "Stock of Subsidiary Co. written off (Main Belting of Canada)" and $29,465 representing advances to the same company, also written off. The Commissioner disallowed both items with no specific explanation for the grounds of his action. The exact amount of loss due to the sale of property is not identified in the notice of deficiency but the parties agree that the third issue is as set forth. Opinion VAN FOSSAN, Judge: The first and second issues present the deductibility in the taxable year 1942 of a bad debt of $29,465 due to the petitioner from the Canadian Company and of cost ($4,975) of stock of the same company. Alternatively, the petitioner asks that we find that both the debt and the stock became worthless in 1940. It is familiar law that questions of this character must be decided on their *260 own peculiar facts and that the decision rests on the reasonable conclusions based thereon. ; ; . The taxpayer is not required to be an "incorrigible optimist", , nor is he permitted to select the year in which the deduction is taken in order to obtain a tax advantage. . And the taxpayer's viewpoint is not determinative in arriving at a reasonable conclusion. The problem must be considered objectively. In the case at bar, we find many significant facts pointing to the ultimate conclusion that both the debt and the stock were worthless in 1939. In 1924, the Canadian Company's balance sheet showed an active and healthy condition. The company was a small one with liabilities preponderatingly running to the petitioner. From 1915 to 1937, inclusive, its gross sales were substantial. However, in 1938, they decreased rapidly and in 1939 (up to April 19) they totalled only $893.16. *261 The profit and loss record was anything but encouraging, From 1923 to 1939, losses were suffered except that fair profits were made in 1926 and 1927, and a profit of $136.65 in 1933. The exact date of the contract between Tobey and Sendel does not appear, but entries relating to consigned stock shows that Sendel was acting under the contract on June 7, 1939. On that date the Canadian Company owed the petitioner $30,094.47. Small periodic credits were made on the account by reason of commissions, sales and minor items (including the tax of $68.79 due to the Province of Quebec) and the balance was reduced thereby to $29,465 on December 21, 1942. The balance sheet of the Canadian Company on May 31, 1939, shows no work in process, no work and equipment, $424.01 in notes and accounts, a small amount of cash, capital assets of about $500, less depreciation, inventories of about $2,000 and an item of $200 labeled "investments". Its liabilities showed only three items: $4,672.45 in accounts payable, $24,925.41 due to the petitioner (evidently an error since it does not check with the stipulated accounts) and $5000 in capital stock. The balance sheet of December 31, 1939, shows a diminution *262 of cash, notes and accounts receivable and inventory, and the same "investments" and capital asset items. Thus the financial condition of the Canadian Company, as shown by its books, is strongly persuasive that the company had no real assets with which to pay its debt to the petitioner, much less to repay its stockholders. Other facts of record confirm this inference. Under an agreement with Tobey, Sendel "took over" the office, warehouse and stock of the Canadian Company and moved them to his own place of business, together with the company's sign. He then operated his own business under the name of "Louis A. Sendel Co." and made many sales of belts and belt installations. The Canadian Company failed to file its "annual summaries" as required under the Canadian Companies Act for at least the years 1939, 1940 and 1941. In 1941 it ignored notices informing it of its default and on January 9, 1942, the Letters Patent issued to it were revoked. On January 31, 1940, the comptroller of the petitioner reported that both the debt and the stock appeared to have no realizable value. The same opinion was expressed by him in his reports of February 3, 1941, and February 3, 1942. On February 10, 1942, an *263 audit report stated that "it was decided" to charge off the items "since these items were decided to be worthless" but did not mention when the items were so determined. In the face of this record, the petitioner has little to offer. It contends that the name and reputation of the Canadian Company were valuable assets, useful in obtaining orders in Canada. That may or may not have been true but such value, if any, was not convertible into cash with which to pay debts. The Canadian Company had no business assets of appreciable value, made no sales, did not share in the profits and exhibited no business activity after December 31, 1939. It only lent its name - and that in a wholly passive way since it was under the control of the petitioner and its officers - to be used by Sendel and petitioner for their own gain. The further fact that the petitioner, the parent corporation, permitted the Canadian Company's charter to be revoked is cumulatively indicative of its judgment of the value of its claims against its subsidiary. The fortuitous fact that Sendel continued to use the name of the Canadian Company after its dissolution lends no financial strength to its status. The product was *264 manufactured by the petitioner, which company bears essentially the same name as the Canadian Company. The petitioner, not the subsidiary, was responsible for the high quality of the goods sold by Sendel after the Canadian Company's factory was abandoned. The petitioner further argues that the Canadian Company had personal property which might have been used to reduce its debt. Its inventory consisted of some belting which was subsequently purchased by Sendel and some belt fasteners of dubious value. The cost of winding up the company's affairs in 1939 could have easily consumed all assets, leaving nothing for the petitioner as a creditor. We agree with the comptroller's original judgment that the debt and stock had "no realizable value" in 1939 and so determine them to be worthless in that year. In a case such as this, no good purpose is served by discussing the authorities cited by the petitioner and respondent. The petitioner's alternative contention that the debt and the stock became worthless in 1940 is wholly unsupported by evidence and also is automatically disposed of by our finding that they became worthless in 1939. However, this alternative position indicates strongly *265 that the petitioner has attempted to shift the date of its losses solely in order to gain a tax advantage. This, as we have said, it cannot do. The third issue involves the fair market value on April 7, 1933, of a building at 919-923 South 13th Street, Philadelphia, sold by the petitioner in 1940 at an alleged loss which it desires to carry over to the taxable year. It is agreed that such fair market value is the only point here in controversy. We have found as a fact that the fair market value of the building and land on that date was $18,000. The record amply supports our finding. The original cost of the property to the petitioner was over $44,000. It sold the property in 1930 for $18,000 and re-acquired it in 1933 by accepting a deed in lieu of foreclosure. The amount then due on the purchase money was $15,000. In 1940 it sold the property for $4,100. The circumstances surrounding the sale were not disclosed but it was suggested that those in charge of the sale were not available as witnesses. We do know that Tobey is dead. The petitioner presented as a witness a real estate broker and appraiser, conceded by the respondent to be an expert. He gave his careful and studied *266 opinion that the fair market value of the property on April 7, 1933, was $18,000. We have no reason to doubt or dispute the correctness of his appraisal. The respondent introduced no witnesses to controvert his testimony. The appraiser also stated that the price of $4,100 was a "very serious understatement" and that if he had been consulted he would not have permitted the sale for that amount. The respondent further argues that the rent of $50 a month indicates that the property had a fair market value of $4,100 on April 7, 1933. We observe that the lease was made on a month-to-month basis. It was the appraiser's opinion that the stated rental of $50 per month "received from a caretaker" was a very good deal. Therefore, we give little weight to the terms of the lease. Decision will be entered under Rule 50.